**KETCHAM et al. v. STATE OF IOWA et al.**

No. 8736.

Circuit Court of Appeals, Eighth Circuit.

April 28, 1930.

Jo R. Jaques, of Ottumwa, Iowa (Jaques, Tisdale & Jaques and Gilmore & Moon, all of Ottumwa, Iowa, and J. C. Calhoun and A. L. Heminger, both of Keosauqua, Iowa, on the brief), for appellants.

Leo D. Thoma, of Fairfield, Iowa (Emily L. Newbold and W. B. Newbold, both of Keosauqua, Iowa, on the brief), for appellees.

Before BOOTH and GARDNER, Circuit Judges, and SANBORN, District Judge.

GARDNER, Circuit Judge.

The grand jury of Van Buren county, Iowa, returned indictments against the appellants, charging each of said parties with the crime of accepting deposits in a state bank located in Van Buren county, Iowa, and named in the indictment, with knowledge of the insolvency of such bank, in violation of the statutes of the state of Iowa. To these indictments separate demurrers were interposed, which were overruled, as were also separate motions to dismiss. These demurrers and motions specifically challenged the constitutionality of the Iowa statutes upon which the indictments were based. On the overruling of their demurrers and the denial of their motions to dismiss, each of the appellants filed in the United States District Court, for the Southern District of Iowa, a petition for a writ of habeas corpus. These petitions, all similar in import, alleged that the petitioner was unjustly and unlawfully imprisoned and restrained of his liberty, in that the indictment found by the grand jury of Van Buren county, Iowa, was without warrant or authority, in that there was then no valid law in force in the state of Iowa,

under which an indictment could be found against the petitioner, charging him with the crime stated in the indictment, to wit, that of receiving a deposit in a bank or conniving at the reception of such deposit when said bank was insolvent, and that there was no valid law in the state of Iowa making the acts charged in the indictment a crime. The petitions were heard together and the writs were denied.

The statutes upon which the indictments are based are sections 9279 and 9280 of the Code of Iowa of 1927 and read as follows:

"Sec. 9279. *Receiving Deposits when Insolvent.*—No bank, banking house, exchange broker, deposit office, firm, company, corporation, or person engaged in the banking, brokerage, exchange, or deposit business, shall, when insolvent, accept or receive on deposit, with or without interest, any money, bank bills or notes, United States treasury notes or currency, or other notes, bills, checks, or drafts or renew any certificate of deposit.

"Sec. 9280. *Violations.*—If any such bank, banking house, exchange broker, deposit office, firm, company, corporation, or person shall receive or accept on deposit any such deposits, as aforesaid, when insolvent, any owner, officer, director, cashier, manager, member, or person knowing of such insolvency, who shall knowingly receive or accept, be accessory, or permit, or connive at receiving or accepting on deposit therein, or thereby, any such deposits, or renew any certificate of deposit, as aforesaid, shall be guilty of a felony, and, upon conviction, shall be punished by a fine not exceeding ten thousand dollars, or by imprisonment in the penitentiary for a term of not more than ten years, or by imprisonment in the county jail not more than one year, or by both fine and imprisonment."

The claim of invalidity of these statutes is based upon the cases of State v. Fields, 98 Iowa, 748, 62 N. W. 653, and State v. Easton, 113 Iowa, 516, 85 N. W. 795, 86 Am. St. Rep. 389, in which the Supreme Court of Iowa held in effect that these statutes were applicable to national banks. The Easton Case was taken to the Supreme Court of the United States, where, in a decision reported as Easton v. Iowa, 188 U. S. 220, 23 S. Ct. 288, 47 L. Ed. 452, the decision of the Supreme Court of Iowa was reversed on the ground that the Legislature of the State of Iowa was without power or authority to define the duties or control the conduct of na-

tional bank officers and that the exercise of such authority conflicted with the laws of the United States. On remittitur the decision of the Supreme Court of Iowa was by that court vacated and set aside.

The statutes involved are general in their wording and do not purport specifically to refer to national banks nor national bank officers or employees. This court is now asked to assume that the Supreme Court of Iowa would now hold these statutes void as applied to officers and employees of private or state banks. Since the reversal of the Easton Case by the Supreme Court of the United States, these statutes have been enforced as applied to officers of state banks, as is evidenced by the decisions of the Supreme Court of Iowa in the following cases: State v. Carter, 182 Iowa, 905, 164 N. W. 759; State v. Kiefer, 183 Iowa, 319, 163 N. W. 698; State v. Gregory, 198 Iowa, 316, 198 N. W. 58; State v. Dunning, 130 Iowa, 678, 107 N. W. 927; State v. Childers, 202 Iowa, 1377, 212 N. W. 63; State v. Ostby, 203 Iowa, 333, 210 N. W. 934, 212 N. W. 550; State v. Pierson, 204 Iowa, 837, 216 N. W. 43. The assumption would seem to be quite unwarranted. There are several cogent reasons why the federal courts should not assume jurisdiction in these cases: (1) There are no such exceptional circumstances nor emergencies as to warrant the federal courts in exercising such jurisdiction. While the federal courts have jurisdiction upon habeas corpus to discharge from the custody of a state officer one restrained of his liberty in violation of the Constitution of the United States, they will not attempt to control criminal prosecution commenced in state courts, except under very exceptional circumstances. As said by Mr. Justice Harlan in Minnesota v. Brundage, 180 U. S. 499, 21 S. Ct. 455, 456, 45 L. Ed. 639, quoting a prior decision of that court: "That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution. When the petitioner is in custody by state authority for an act done or omitted to be done in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof; or where, being a subject or citizen of a foreign state, and domiciled therein, he is in custody,

under like authority, for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, or order, or sanction of any foreign state, or under color thereof, the validity and effect whereof depend upon the law of nations; in such and like cases of urgency, involving the authority and operations of the general government, or the obligations of this country to, or its relations with, foreign nations, the courts of the United States have frequently interposed by writs of habeas corpus and discharged prisoners who were held in custody under state authority. So, also, when they are in the custody of a state officer, it may be necessary, by use of the writ, to bring them into a court of the United States to testify as witnesses. * * * The present case does not come within any of the exceptions to the general rule announced in the cases above cited. It is not, in any legal view, one of urgency." See also Urquhart v. Brown, 205 U. S. 179, 27 S. Ct. 459, 51 L. Ed. 760; Pettibone v. Nichols, 203 U. S. 192, 27 S. Ct. 111, 51 L. Ed. 148, 7 Ann. Cas. 1047; Drury v. Lewis, 200 U. S. 1, 26 S. Ct. 229, 50 L. Ed. 343; Ashe v. Valotta, 270 U. S. 424, 46 S. Ct. 333, 70 L. Ed. 662. The petitioners in the instant case do not come within any of the exceptions that have been recognized by the federal courts as warranting the exercise of jurisdiction in their behalf, and the lower court properly so held. (2) Under the laws of Iowa, the Supreme Court of that state has original jurisdiction in habeas corpus, and no reason appears why appellants should not present their applications to that court. Ware v. Sanders, 146 Iowa, 233, 124 N. W. 1081. The words of Mr. Justice Harlan in the Brundage Case, supra, are apposite. It is there said: "The accused does not, in his application, state any reason why he should not be required to bring the question involved in the prosecution against him before a higher court of the state and invoke its power to discharge him if in its judgment he is restrained of his liberty in violation of the Constitution of the United States. It cannot be assumed that the state court will hesitate to enforce any rights secured to him by that instrument; for upon them equally with the courts of the Union rests the duty to maintain the supreme law of the land." The contention presented that the trial of the cases on the indictments returned, would cause great delay, expense, and inconvenience, is answered by the suggestion that a proceeding identical with that invoked in these proceedings, could with equal facility

and with no greater inconvenience, delay, or expense, than that involved in presenting the matter to the federal court, have been presented directly to the Supreme Court of the State of Iowa. Ex Parte Hoese, 48 S. D. 337, 204 N. W. 174. Whether or not these statutes are valid as applied to state bankers and employees, even though invalid as applied to national bank officers, is a question which should be determined by the Supreme Court of Iowa, and when that court speaks on this subject, its decision will be binding on the federal courts. Storti v. Massachusetts, 183 U. S. 138, 22 S. Ct. 72, 46 L. Ed. 120. (3) The appellants are not officers or employees of national banks. Confessedly, the Legislature of Iowa had authority to legislate with reference to the officers and employees of state banks, and it is not perceived how these appellants can be prejudiced by reason of the fact that the statutes involved may be unconstitutional as to officers or employees of national banks. It is not material that these statutes are unconstitutional as applied to officers of national banks, but it must appear that the persons attacking them come within the class of persons as to whom they are unconstitutional. Louisville & N. R. R. Co. v. Finn, 235 U. S. 601, 35 S. Ct. 146, 150, 59 L. Ed. 379; Mallinckrodt Chemical Works v. Missouri, 238 U. S. 41, 35 S. Ct. 671, 59 L. Ed. 1192. As is said in Louisville & N. R. R. Co. v. Finn, supra, "it is incumbent upon one who seeks an adjudication that a state statute is repugnant to the Federal Constitution to show that he is within the class with respect to whom it is unconstitutional." See also Missouri, etc., Ry. Co. v. Cade, 233 U. S. 642, 34 S. Ct. 678, 58 L. Ed. 1135; Ballard v. Hunter, 204 U. S. 241, 27 S. Ct. 261, 51 L. Ed. 461; Newark Gas Co. v. Newark, 242 U. S. 405, 37 S. Ct. 156, 61 L. Ed. 393, Ann. Cas. 1917B, 1025; Erie R. R. Co. v. Williams, 233 U. S. 685, 34 S. Ct. 761, 58 L. Ed. 1155, 51 L. R. A. (N. S.) 1097; State v. Kirby, 34 S. D. 281, 148 N. W. 533.

It is argued by appellants that the statutes are not severable, and having been held by the Supreme Court of the United States to be unconstitutional as to officers of national banks, it necessarily follows that they are void as to officers of state banks. We do not deem it necessary nor proper for this court to pass on this question at this time. It may be observed, however, that where a statute is susceptible of two interpretations, by one of which it would be unconstitutional, and by the other it would be valid, courts

are disposed to adopt the construction which would uphold it. In any event, in view of the record in this case, we would not be warranted in assuming that the Supreme Court of Iowa will hold these statutes unconstitutional as applied to officers of state banks, and we refrain from expressing any opinion on that question.

The judgment appealed from must be and is affirmed. Let mandate of this court be issued forthwith.